## CARROLL executor of STERRET v. NIXON.

### September 28, 1840.

*Rule to show cause why a nonsuit should not be taken off.*

M. became administrator of K., in Maryland, and S. there became his surety in the Orphan's Court. Subsequently N., in Philadelphia, wrote a letter to L., in Maryland, stating, that having been informed that he, S., had become surety as aforesaid, and having been requested so to do by M., he, N., thereby promised and agreed to indemnify S. against all loss or injury which he might sustain in consequence of his having become such surety. The executor of S, sued N. in this court on this promise: *Held*, that plaintiff could not recover. the contract being governed by the laws of Maryland, in which the statute of frauds is in force, and no sufficient consideration being stated on the face of the contract, which is required by the statute of frauds to make it valid.

THIS action was brought by —— Carroll, executor of Samuel Sterret, deceased, against Henry Nixon. It was founded on the following paper, viz. :

"Philadelphia, 18th March, 1818.

Dear Sir,

Mr. Thomas Morris having informed me of his having taken out letters of administration to administer on the estate of *Archibald Kane*, deceased, and that you *have become* one of his sureties to the Orphan's Court of the State of Maryland for the faithful performance of his trust, I do, at the request of Mr. Morris, hereby promise and agree to indemnify you against all loss

---

[a] Vide Warner *v.* Bancroft, *ante* 95, and Shove *v.* Edgell, *ante* 174; the latter case as to the security for thirty days.

or injury which you may sustain in consequence of your having become security for him in this business.

> "I remain, very respectfully,
> "Yours, &c.
> "HENRY NIXON."

"Samuel Sterret, Esq., Maryland.

*Williams,* for defendant, on the trial before Judge STROUD, moved for a nonsuit,

"Because the agreement is to be construed according to the law of Maryland; and the statute of frauds being in force in Maryland, the consideration must be stated in the contract to be valid. No consideration is stated in this contract."

The judge ordered a nonsuit to be entered.

The plaintiff obtained a rule to show cause why the nonsuit should not be taken off, and assigned the following reasons, viz:

"1. Because the contract, having been made in Pennsylvania, is to be governed by the laws of Pennsylvania.

"2. Because the contract was to be performed in Pennsylvania, and is to be governed by the laws of Pennsylvania.

"3. Because a sufficient consideration is stated in the contract.

"4. Because the promise is not within the statute."

The following is an abstract of plaintiff's declaration:

"1*st Count.*—That Thomas Morris promised to procure for Samuel Sterret, before entering into the bond (Bond 14, March 1818), as security for Thomas Morris, the counter security from the said Henry Nixon, against any injury that might occur by reason, &c. Then Sterret entered into the bond, with others, &c.; then the said Henry Nixon, in consideration of the premises, and that Sterret had sealed the bond, trusting to the promise of Thomas Morris to procure the guarantee of the said Henry Nixon, as aforesaid, he the said Henry Nixon afterwards, on the 18th March, 1818, promised to indemnify.

"2*d Count.*—That Thomas Morris in order to procure Sterret to be his security, did procure the promise of Henry Nixon that he would indemnify Sterret from all loss and damage, &c.; and Sterret, relying upon the promise of Henry Nixon, did on the 4th March, 1818, enter into the bond, &c.; and Henry Nixon, in consideration of the premises and of his said promise, and that the said Samuel Sterret had signed, &c. the bond, in reliance

[Carroll v. Nixon.]

upon the said promise, made to Sterret by Nixon before the execution, the said Nixon, on the 18th March, 1818, promised to indemnify, &c.

"*3d Count.*—That Morris, Sterret, and Johnson, the two last as securities for the faithful performance of the duties of Morris as administrator of Kane, on the 4th March, 1818, entered into bond, &c. in the sum of $20,000, &c. for faithful performance of duties as administrator, and by virtue of the laws of Maryland, then and long afterwards in force, it was provided that if any security of any executor or administrator, should conceive him or herself in danger of suffering from the suretyship, he might apply to the Orphans' Court which granted administration, and said court might call upon the party to give counter security, to be approved by the court, and if the said party so called on should not within a fixed reasonable time, give such counter security, the court might order the property so remaining in the hands of such executor or administrator to be delivered to such security; the said Henry Nixon, in consideration of the premises, and that the said Sterret should forbear applying to the said Orphans' Court to call upon the said Thomas Morris for such counter security as aforesaid, according to the provisions of the said laws of the state of Maryland, on the 18th March, 1818, did promise, &c. to indemnify the said Sterret against all loss and injury he might sustain for having become security as aforesaid. Sterret confiding in the promise of Nixon in his lifetime, and the plaintiffs after his death, did forbear to apply to the Orphans' Court for counter security, according to the provisions of said act, *until the first of January*, 1838.

"*4th Count.*—Thomas Morris, administrator of A. Kane, and Sterret and Johnson, sureties for the faithful performance of the duties of his office, did on the 4th of March, 1818, by their writing obligatory, sealed with their seals, &c.

"And the said Henry Nixon, then and there at Philadelphia, on the 18th March, 1818, held in his hands large sums of money, and other estate belonging to Thomas Morris, and being thereby secured against all loss, by reason of the hereinafter mentioned agreement, did then and there in consideration thereof, undertake and promise and agree to indemnify, &c.

"And the said Sterret in his lifetime, confiding in the said promise of the said Henry Nixon, did continue during his lifetime

[Carroll v. Nixon.]

surety as aforesaid, without securing himself as he might have done against the loss or injury on account of his suretyship, and since the death of said Sterret, the plaintiff's executors have continued relying as aforesaid on the said promise of the said Nixon, until the first of January, 1838, whereof the said Nixon had notice.

" *5th Count.*—And the said Nixon, on the 18th March, 1818, held in his hands a large amount of money, and other estate belonging to Thomas Morris, and the said Thomas Morris agreed with the said Nixon, in consideration that he should execute an agreement to save harmless the said Sterret, &c., that he should retain possession of the money and estate, he the said Nixon being thereby secured against loss, did then and there in consideration thereof, did agree to indemnify the said Sterret against loss, &c.

" And plaintiffs aver that Nixon retained and still retains large sums of money, &c., and that Sterret confiding in the said promise, did continue during his lifetime surety as aforesaid, without securing himself, as he might have done, against loss; and since his death the executors the plaintiffs, have so continued relying as aforesaid on the said promise of Nixon.

" *1st additional Count.*—That Sterret and Johnson gave bond, &c., and in consideration thereof, and that Sterret had become surety, Nixon agreed to indemnify surety against future acts, &c., that Nixon had notice, &c.

" *2d additional Count.*—That Sterret and Johnson became bound, and that if Sterret at special instance of defendant would continue surety without demanding further surety, Nixon agreed to indemnify Sterret for further acts of Morris, that Sterret did continue, &c.

" *3d additional Count.*—That Sterret and Johnson became bound at special instance and request of Nixon, and received said Nixon as surety, without demanding other security, Nixon agreed to indemnify; that confiding therein, Sterret continued surety without demanding, &c."

*H. McIlvaine*, for the rule.
*Williams*, contra.

The counsel cited 1 *Ch. Pl.* 298; 4 *East* 154; 12 *East* 227; 14 *Ves. Jr.* 189; 1 *McCord* 515; 3 *Salk.* 96; *Cro. Eliz.* 59; *Pow. on*

[Carroll v. Nixon.]

*Con.* 349 ; 5 *S. & R.* 373 ; 8 *Taunt.* 679 ; 1 *Bing.* 316 ; 16 *E. C. L. R.* 335 ; 8 *E. C. L. R.* 302 ; *Cro. Eliz.* 94 ; 2 *Watts* 104 ; 10 *Wend.* 250 ; 2 *Peters S. C. R.* 182 ; 17 *Mass.* 400 ; 3 *Burr* 1663 ; 1 *Caines* 450 ; 12 *Mass.* 297 ; 15 *E. C. L. R.* 333 ; 3 *Man. & Ry.* 444 ; 2 *Car. & P.* 249 ; *Theobald on P. & S.* 1 *Law Library* 37 ; *Story's Con. of Laws* 201–2, 215, 233–5–6, 262 ; 7 *T. R.* 241 ; 3 *Conn. R.* 254 ; 12 *Johns. R.* 142 ; 3 *Mass.* 77 ; 3 *East* 123 ; 2 *Johns. R.* 235 ; 10 *Wheat.* 367 ; 2 *Har. & Johns.* 191, 200 ; 13 *Mass.* 4.

Per Curiam.—After a careful examination of the numerous authorities cited by the counsel, we are of opinion against the plaintiff. The contract was within the statute of frauds. This being in force in Maryland, the next question is whether the law of Maryland or of Pennsylvania is to govern. It is said that the place of the contract is in this state, having been written here. To this, it is properly answered, that a contract takes effect at its place of delivery as to a question of this kind, especially where, as upon its face is apparent, the subject matter of the contract existed. The laws of Maryland therefore govern the contract. Such being the case, a sufficient consideration must be stated in the contract to make it valid. None appears to be so stated. In the first place, the promise to indemnify Sterret was after he had become surety of Morris at the request of the latter. And the promise to indemnify was not made at the request of Sterret. As between Sterret and Nixon it was a voluntary act of the latter, not at the instance and request of the former, and founded on no consideration moving between the parties.

Rule discharged.